IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MELISSA ESQUIBEL**,

    Plaintiff,                                                Civ. 09-775

against

**GIGABLAST, INC.,** a Delaware
corporation licensed to do business, and
doing business in, New Mexico;
**GIGABLAST LLC,** a New Mexico
limited liability company; and
**MATT WELLS,** individually and as
owner of Gigablast, Inc., and Gigablast LLC;

    Defendants.

**COMPLAINT FOR SEX DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE CIVIL RIGHTS ACT OF 1991 AND THE NEW MEXICO HUMAN RIGHTS ACT; WRONGFUL TERMINATION; ASSAULT AND BATTERY; BAD FAITH BREACH OF CONTRACT; INFLICTION OF EMOTIONAL DISTRESS/OUTRAGEOUS CONDUCT; AND INTENTIONAL INTERFERENCE WITH EMPLOYMENT CONTRACT**

       COMES NOW Plaintiff Melissa Esquibel, by and through her counsel, The Bennett Firm, and for her Complaint against Defendants states as follows:

**JURISDICTION AND VENUE**

       l.      The Plaintiff brings this action pursuant to the New Mexico Human Rights Act, N.M.S.A. 1978 § 28-1-1 to -14, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-15, as amended, the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and New Mexico law.

       2.      Jurisdiction over the federal claims is proper under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over state law claims, including the New Mexico Human Rights Act and other tort claims under 28 U.S.C. § 1367.  Venue is proper in this Court under 28 U.S.C. § 1391(b).

**OVERVIEW**

3. This case involves a female, Plaintiff Melissa Esquibel, who was employed as an executive officer of Defendant Gigablast, Inc., aka Gigablast LLC, (hereinafter collectively "Gigablast") a computer software company, at its principal place of business at 5600 Wyoming Blvd., NE, Suite 160, Albuquerque, New Mexico, and owned and operated by its CEO, Defendant Matt Wells.

4. Ms. Esquibel was a loyal employee of Gigablast and held in high esteem by Mr. Wells **until she became pregnant**. After informing Mr. Wells of her pregnancy, Mr. Wells subjected her to pervasive harassment and gender discrimination.

5. When Ms. Esquibel finally expressed to Mr. Wells that she was concerned about his harassment and disparate treatment of her because she was pregnant, Mr. Wells retaliated against her two days later by terminating her employment with Gigablast, Inc., and physically assaulting and battering Ms. Esquibel, who was then six-months pregnant, as she was vacating her office.

**PARTIES**

6. Plaintiff Melissa Esquibel (hereinafter "Ms. Esquibel") is a resident of Bernalillo County, New Mexico.

7. Defendant Gigablast, Inc., (hereinafter "Gigablast"), is a Delaware corporation, licensed to do business in New Mexico by virtue of its filing of record with the New Mexico Public Regulation Commission ("NMPRC") in Santa Fe County, New Mexico, as a foreign corporation. The Plaintiff, Ms. Esquibel, is still listed with the NMPRC in Santa Fe County as the registered agent of Gigablast, Inc. Defendant Gigablast LLC (also hereinafter "Gigablast") is a New Mexico limited liability company which is believed to be the predecessor of and/or affiliated with Defendant

Gigablast, Inc., and which initially employed Ms. Esquibel.

8. Defendant Matt Wells (hereinafter "Mr. Wells") is believed to be a resident of New Mexico and at all times relevant herein was the CEO and majority stockholder of Gigablast, Inc., and owner of Gigablast LLC (collectively "Gigablast"), acting individually and on behalf of Gigablast and during the course and scope of his ownership of and employment with Gigablast. Mr. Wells was also both Gigablast, Inc.'s and Gigablast LLC's alter ego, thereby individually controlling Gigablast and individually liable for any conduct otherwise attributed herein to Gigablast and causing Gigablast (both business entity Defendants) to be liable for all of Mr. Wells' individual conduct described herein.

**ESSENTIAL FACTS**

9. Ms. Esquibel was employed by Mr. Wells to work for Gigablast on January 12, 2005. She was an excellent employee, and, in February of 2006, left her employment with Gigablast for another job. In August of 2006, Mr. Wells enticed Ms. Esquibel to return to work for Gigablast, offering her $45,000.00 per year with future raises. Ms. Esquibel was initially hired as the Finance Director for the company, but her job responsibilities soon expanded to include Sales and Business Director, Marketing Director and Human Resources. Within two months of her re-employment, Mr. Wells raised Ms. Esquibel's salary to $50,000.00 per year.

10. On May 4, 2007, Mr. Wells honored Ms. Esquibel with an award for her outstanding job performance, and presented her with a card that read, **"You [Ms. Esquibel] are an outstanding employee and you are a valuable asset to Gigablast, Inc., Sincerely, Matt."**

11. At the end of June of 2007, Ms. Esquibel informed Mr. Wells that she was pregnant.

12. The announcement of her pregnancy posed a problem for Mr. Wells, as he did not like

small children nor did he want to employ anyone who had small children.

13. In late 2005, at a lunch meeting with Ms. Esquibel and the Sales and Business Manager, Mr. Charles Mandeville, Mr. Wells stated, **"I don't want to hire anyone with small children because they would take too much time off work."** In addition, Mr. Wells would also become extremely irritated whenever young children (including Mr. Mandeville's two young children) would be in the workplace, and Mr. Wells would frequently make derogatory comments about children. On one occasion, Mr. Wells actually ordered Mr. Mandeville to remove his children from the Gigablast premises.

14. After Ms. Esquibel informed Mr. Wells that she was pregnant in June of 2007, Mr. Wells' attitude toward Ms. Esquibel totally changed, and it immediately became apparent that he was planning to terminate her employment.

15. After Ms. Esquibel informed Mr. Wells that she was pregnant in June of 2007, Mr. Wells began to require Ms. Esquibel to inform him regarding all of the many duties Ms. Esquibel was performing and then had her place employment advertisements for new employees to be hired to perform those duties. Mr. Wells stopped taking Ms. Esquibel to lunch, as he had done for the two years prior to being informed of her pregnancy, yet he continued to take other employees to lunch.

16. Ms. Esquibel finally voiced to Mr. Wells her concern about his change in behavior toward her since she informed him of her pregnancy, and Mr. Wells disingenuously told her that she had been doing a **"good job,"** that she was a **"good employee"** and that she had **"nothing to worry about."**

17. In August of 2007, at her hiring anniversary date, Ms. Esquibel reminded Mr. Wells that he had promised to Ms. Esquibel in January of 2007 that she would receive in August of 2007,

at her annual review, a $5,000.00 per year salary increase and an additional option to purchase company stock in August of 2007. Mr. Wells stated that he would not give Ms. Esquibel a raise because of the company's **"bad financial situation."** (Ms. Esquibel, who was the Finance Director, knew that Mr. Wells' statement regarding the company's "bad financial situation" was false, as Gigablast had sufficient revenues to support the promised raise.) Following this confrontation, Mr. Wells reluctantly agreed to give Ms. Esquibel a small raise, even though he gave larger raises to other male employees, despite the company's "bad financial situation."

18.    On October 22, 2007, Ms. Esquibel, who was then six-months pregnant, delivered to Mr. Wells an order from Ms. Esquibel's doctor that she had to reduce the number of hours she worked because of the progression of her pregnancy. (Ms. Esquibel had been working more than 40 hours per week for Gigablast.)

19.    On October 24, 2007, only two days after Ms. Esquibel had requested this work accommodation from Mr. Wells because of her progressing pregnancy, Mr. Wells summarily informed Ms. Esquibel, **"I want to terminate our business relationship."** Mr. Wells then curiously remarked that her termination **"has nothing to do with you being pregnant"** and that Ms. Esquibel was a "good employee" and with her education and experience it would not be hard for her to find another job. When Ms. Esquibel asked why he was firing her if she was such a good employee, Mr. Wells said, **"I don't have to give you a reason."**

20.    Mr. Wells then escorted Ms. Esquibel to her office so she could gather her personal belongings and leave the building. When Ms. Esquibel attempted to print some personal documents from her computer, **Mr. Wells, in the presence of another female employee, violently struck Ms. Esquibel's hand, the impact of the blow to Ms. Esquibel's physical person knocking the**

**computer mouse and the computer keyboard to the floor.** Mr. Wells threatened Ms. Esquibel that if she interfered with Gigablast in any way, he would **"sue her."** Ms. Esquibel was quite alarmed, humiliated and physically shaken by this assault and battery upon her person which was perpetrated by Mr. Wells against a pregnant woman without any justification whatsoever.

21.     Approximately one week following Mr. Wells' unlawful termination of Ms. Esquibel, Mr. Wells incredibly stated at a company staff meeting, **"I probably would have fired her [Ms. Esquibel] after she had the baby anyways."** This outrageous statement has been confirmed by two of the company's engineers who were present at the staff meeting.

22.     Following her termination, because she was pregnant and without income, Ms. Esquibel applied for unemployment compensation. Instead of allowing Ms. Esquibel to receive unemployment compensation, Mr. Wells wrongfully and maliciously opposed her application. In order to deliberately inflict additional emotional distress upon Ms. Esquibel, Mr. Wells also delayed the delivery to her of her final paycheck for approximately two months, in direct violation of state law. *See* NMSA 1978, Section 50-4-4.

23.     One of the engineers who was at the staff meeting referred to in Paragraph 15 above left the employ of Gigablast because he thought it was "morally wrong" that Mr. Wells terminated Ms. Esquibel "because she was pregnant" and then opposed this pregnant mother's subsequent application for unemployment compensation benefits.

24.     As a part of her employment contract with Gigablast, Ms. Esquibel had been granted options to purchase stock in the company (hereinafter "stock options"). These options were represented by Mr. Wells to the employees of Gigablast to be very valuable, "Everyone's going to walk away with a million dollars." Said options could have been theoretically exercised by Ms.

6

Esquibel within 90 days of a legitimate termination from her employment with Gigablast. However, because of the illegal, threatening and hostile circumstances surrounding her discriminatory and retaliatory termination, including Mr. Wells' physical assault upon and intimidation of Ms. Esquibel and the deliberate failure of Gigablast to provide documents to Ms. Esquibel to effectuate the exercise of such stock options, Ms. Esquibel was effectively prevented from exercising such stock options, causing her to suffer the loss of any gain of value in said Gigablast stock which may have accrued since the date of her wrongful termination or which may accrue in the future. Because of the nature and effect of these illegal circumstances, Ms. Esquibel is entitled to be deemed to have exercised any such available stock options as of the date of her wrongful termination.

25. As a direct result of Mr. Wells', and therefore Gigablast's, illegal harassment of and gender discrimination against Ms. Esquibel because she was a pregnant woman and their retaliation against her via termination of her employment and Mr. Wells' subsequent assault and battery upon her and his denial of her unemployment compensation benefits and her stock options and his illegal delay of her final paycheck, and because of Mr. Wells' complete disregard for Ms. Esquibel's rights and feelings, Ms. Esquibel has suffered and will continue to suffer loss of earnings, loss of reputation, pain and suffering and severe and extreme emotional distress, entitling her to recover from the Defendants compensatory damages. A jury is also entitled to award punitive damages against the Defendants, jointly and severally, in order to punish them for their illegal behavior and to deter them from perpetrating similar misconduct upon other pregnant female employees in the future.

## COUNT I
## Gender Discrimination in Violation of
## Title VII of the Civil Rights Act, As Amended
## (All Defendants)

26.     The allegations stated in paragraphs 1 through 25 are repeated as if fully stated herein.

27.     The above-described misconduct conduct perpetrated by the Defendants constituted harassment and discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), as amended ("Title VII of the Civil Rights Act").  Defendants Gigablast are therefore liable to Plaintiff for all of her statutory remedies, including actual, consequential and punitive damages and attorney's fees.

28.     Defendants Gigablast wrongfully terminated Ms. Esquibel's employment because she was a pregnant woman who opposed Defendants' illegal gender discrimination.

29.     Defendants' discrimination and retaliation against Ms. Esquibel violated Ms. Esquibel's rights under Title VII of the Civil Rights Act  Defendants Gigablast are therefore liable to Plaintiff for all of her statutory remedies, including actual, consequential and punitive damages and attorney's fees.

30.     As a direct result of the aforesaid conduct by the Defendants, Ms. Esquibel has suffered and will continue to suffer embarrassment, humiliation and loss of employment and other damages.  Further, as a direct result of the aforesaid conduct of the Defendants, Ms. Esquibel has been prevented from performing her normal daily activities and obtaining the full enjoyment of life and have sustained loss of earnings and will continue to incur other related damages.

31.     The conduct of the Defendants set forth above was intentional, willful, malicious, reckless, wanton and/or grossly negligent and was undertaken with a total disregard for Ms.

Esquibel's rights and feelings, knowing that their actions or inactions would cause Ms. Esquibel to suffer economic loss and emotional damage.

WHEREFORE, on Count I, Ms. Esquibel requests that judgment be entered against Defendants, jointly and severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such further relief as the Court deems proper.

### COUNT II
### Gender Discrimination in Violation of
### the New Mexico Human Rights Act
### (All Defendants)

32.     Plaintiff incorporates and re-alleges Paragraphs 1 through 31 above as if fully set forth herein.

33.     The New Mexico Human Rights Act, NMSA §28-1-7, *et seq.*, makes it an unlawful and discriminatory practice for an employer to discriminate in the terms and conditions or privileges of employment because of a person's sex.

34.     The Defendants had a duty by law not to discriminate against and/or harass Ms. Esquibel because she was a pregnant female.

35.     The Defendants violated this duty, as well as NMSA 1978, §28-1-7, by their aforementioned actions and inactions and by their actions in creating and perpetuating a hostile and sexually discriminating work environment.

36.     As a direct result of the aforesaid conduct by the Defendants, Ms. Esquibel has suffered and will continue to suffer embarrassment, humiliation and loss of employment and other damages. Further, as a direct result of the aforesaid conduct of the Defendants, Ms. Esquibel has been prevented from performing her normal daily activities and obtaining the full enjoyment of life

and have sustained loss of earnings and will continue to incur other related damages.

37. The conduct of the Defendants set forth above was intentional, willful, malicious, reckless, wanton and/or grossly negligent and was undertaken with a total disregard for Ms. Esquibel's rights and feelings, knowing that their actions or inactions would cause Ms. Esquibel to suffer economic loss and emotional damage.

WHEREFORE, on Count II, Ms. Esquibel requests that judgment be entered against Defendants, jointly and severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such further relief as the Court deems proper.

## COUNT III
### Wrongful Termination and Retaliation in Violation of
### Title VII of the Civil Rights Act and the New Mexico Human Rights Act
### (All Defendants)

38. Plaintiff incorporates and re-alleges Paragraphs 1 through 37 above as if fully set forth herein.

39. Title VII of the Civil Rights Act and the New Mexico Human Rights Act declare that it is unlawful for an employer to retaliate against an employee who opposes a discriminatory practice made unlawful pursuant to the terms of these federal and state statutes.

40. The Defendants' retaliation against Ms. Esquibel, including the termination of her employment, after she had reported unlawful gender discrimination and gender-based harassment to the Defendants, constitutes unlawful retaliation prohibited by Title VII of the Civil Rights Act and the New Mexico Human Rights Act.

41. The refusal of the Defendants to abide by their legal obligation to protect the rights

of Ms. Esquibel and to ensure her safety and freedom from sexual harassment and discrimination and physical assault in the workplace resulted in an intolerable work environment which cause the constructive termination of Ms. Esquibel's employment, in violation of the aforementioned federal and state statutes.

42. Therefore, Ms. Esquibel was wrongfully terminated by the Defendants through their tortious, illegal and retaliatory misconduct.

43. The Defendants' actions were intentional, willful, malicious, reckless, wanton, grossly negligent and/or deliberately indifferent to Ms. Esquibel's rights and feelings, thereby entitling her to an additional award of punitive damages.

44. As a result of the Defendants' misconduct, Ms. Esquibel has suffered and will continue to suffer economic damages, embarrassment, humiliation and severe emotional distress, as well as other related damages.

WHEREFORE, on Count III, Ms. Esquibel requests that judgment be entered against Defendants, jointly and severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

### COUNT IV
### Bad Faith Breach of Contract/Wrongful Termination
### (All Defendants)

45. Plaintiff incorporates and re-alleges Paragraphs 1 through 44 above as if fully set forth herein.

46. Ms. Esquibel was employed by Gigablast pursuant to a contract of employment that had, by implication, a covenant of good faith and fair dealing which required Ms. Esquibel to be

treated fairly and with respect and in accordance with state and federal law and New Mexico public policy. This covenant was breached by these Defendants as demonstrated above, which breach and termination of Ms. Esquibel's employment constituted wrongful termination and a bad faith breach of her contract of employment in violation of state law and New Mexico public policy, entitling Ms. Esquibel to recover damages from these Defendants.

47. These Defendants' breaches of Ms. Esquibel's employment contract were intentional, willful, malicious, reckless, wanton, grossly negligent and/or deliberately indifferent to her rights and feelings and were accomplished in bad faith, thereby entitling Ms. Esquibel to an additional award of punitive damages.

48. As a result of these Defendants' breaches of Ms. Esquibel's employment contract (including her entitlement to exercise stock options), Ms. Esquibel has suffered and will continue to suffer economic damages, embarrassment, humiliation and severe emotional distress, as well as other related damages.

WHEREFORE, on Count IV, Ms. Esquibel requests that judgment be entered against Defendants Gigablast, jointly and severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

## COUNT V
### Intentional Interference with Employment Contract
### (Defendant Wells)

49. Plaintiff incorporates and realleges Paragraphs 1 through 48 above as if fully set forth herein.

50. Ms. Esquibel had a contract of employment with Gigablast, of which the individual

Defendant, Mr. Wells, intentionally procured its breach.

51.     Mr. Wells breached his duty to Ms. Esquibel to not interfere with her contract of employment with Gigablast, through any artifice whatsoever, to include by unlawfully procuring her termination.

52.     Mr. Wells is therefore liable to Ms. Esquibel for his tortious interference with Ms. Esquibel's contract of employment with Gigablast.

53.     Mr. Wells' interference with Ms. Esquibel's contract was intentional, willful, malicious, reckless, wanton, grossly negligent and/or deliberately indifferent to Ms. Esquibel's rights and feeling, thereby entitling Ms. Esquibel to an additional award of punitive damages.

54.     As a result of Mr. Wells' intentional interference with Ms. Esquibel's employment contract, Ms. Esquibel has suffered and will continue to suffer economic damages, embarrassment, humiliation and severe emotional distress, as well as other related damages.

WHEREFORE, on Count V, Ms. Esquibel requests that judgment be entered against Mr. Wells, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

## COUNT VI
### Assault and Battery
### (All Defendants)

55.     Plaintiff incorporates and realleges Paragraphs 1 through 54 above as if fully set forth herein.

56.     On October 24, 2007, as described above, Mr. Wells, acting individually and on behalf of his alter ego, Defendant Gigablast, intentionally engaged in menacing conduct directed toward Ms. Esquibel causing her to have reason to believe that he would inflict immediate bodily

injury upon her person.

57. In fact, Mr. Wells did intentionally apply physical force to Ms. Esquibel's person in a rude, insolent and angry manner.

58. All of the foregoing has caused Ms. Esquibel to suffer shock, humiliation, embarrassment and extreme and severe emotional distress and other consequential damages, for which Mr. Wells, and his alter ego Defendant Gigablast, are fully liable. Defendants Wells and Gigablast subsequently ratified and condoned this egregious misconduct by, among other things, failing to apologize to Ms. Esquibel, by failing to reinstate her employment which had been illegally terminated, by delaying the delivery of her last paycheck, by preventing her from exercising her stock options and by opposing her application for unemployment compensation benefits.

59. The above-described assault and battery inflicted upon Ms. Esquibel by the Defendants was undertaken by the Defendants intentionally, willfully, maliciously, recklessly, wantonly, negligently and/or with deliberate indifference to her rights and feelings, thereby entitling her to an additional award of punitive damages.

WHEREFORE, on Count VI, Ms. Esquibel requests that judgment be entered against Defendants, jointly and severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

## COUNT VII
### Infliction of Emotional Distress/Outrageous Conduct
### (All Defendants)

60. Plaintiff incorporates and realleges Paragraphs 1 through 59 above as if fully set forth herein.

61.    The Defendants intended (or acted with negligent and/or reckless indifference for the consequences of their acts and/or omissions) and/or knew or should have known that their acts and omissions as described above would cause Ms. Esquibel to suffer severe and extreme emotional distress. Defendant Wells' misconduct was ratified and adopted by Defendants Gigablast, his alter egos.

62.    As a result of this outrageous conduct and infliction of emotional distress upon Ms. Esquibel by the Defendants, Ms. Esquibel has suffered embarrassment, humiliation, loss of her preferred career, economic damages and severe and extreme emotional distress, for which the Defendants are jointly and severally liable to Ms. Esquibel.

63.    This infliction of emotional distress upon Ms. Esquibel was undertaken by the Defendants intentionally, willfully, maliciously, recklessly, wantonly, negligently and/or with deliberate indifference to her rights and feelings, thereby entitling her to an additional award of punitive damages.

WHEREFORE, on Count VII, Ms. Esquibel requests that judgment be entered against Defendants, jointly and severally, awarding her compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

Respectfully submitted,

THE BENNETT FIRM


By  */s/ Merit Bennett*
    Merit Bennett/Talia V. Kosh
    460 St. Michael's Drive, Ste. 703
    Santa Fe, New Mexico 87505
    (505) 983-9834
    *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MELISSA ESQUIBEL**,

    Plaintiff,	Civ. 09-775

against

**GIGABLAST, INC.,** a Delaware
corporation licensed to do business, and
doing business in, New Mexico;
**GIGABLAST LLC,** a New Mexico
limited liability company; and
**MATT WELLS,** individually and as
owner of Gigablast, Inc., and Gigablast LLC;

    Defendants.

## JURY DEMAND

    Plaintiff hereby demands that all issues be tried to a jury.

        Respectfully submitted,

        THE BENNETT FIRM


        By  */s/ Merit Bennett*
          Merit Bennett/Talia V. Kosh
          460 St. Michael's Drive, Ste. 703
          Santa Fe, New Mexico 87505
          (505) 983-9834
          *Attorneys for Plaintiff*